2021 IL App (1st) 200584

No. 1-20-0584

Second Division
April 27, 2021

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| UNIVERSAL METRO ASIAN SERVICES ASSOCIATION and UNIVERSAL INDUSTRIES, INC., | ) ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiffs-Appellees, | ) ) | |
| v. | ) ) | No. 2017 L 000662 |
| IMRAN MAHMOOD; ACCURATE CONSULTING ENTERPRISE GROUP, LTD.; ACCURATE BUILDERS GROUP, LTD.; MEHNAZ IMRAN; and CHICAGO TITLE LAND TRUST COMPANY, as Trustee on behalf of Trust No. 8002365763, | ) ) ) ) ) ) ) ) | Honorable Michael F. Otto |
| Defendants-Appellants. | ) | Judge, presiding. |

_____

JUSTICE COBBS delivered the judgment of the court, with opinion.
Justices Lavin and Pucinski concurred in the judgment and opinion.

**OPINION**

¶ 1    Plaintiffs-appellees, Universal Metro Asian Services Association (Universal Metro) and

Universal Industries, Inc. (collectively, Universal), filed suit in state court against defendants-

appellants, Imran Mahmood; Mehnaz Imran; Chicago Title Land Trust Company as trustee on

behalf of trust No. 8002365763; and Accurate Consulting Enterprise Group, Ltd., and Accurate Builders Group, Ltd. (collectively, Accurate companies), alleging conversion and unjust enrichment. After Mahmood was criminally charged with tax evasion in federal court, he moved to stay the state court civil proceedings and discovery until the resolution of the federal criminal case. Specifically, Mahmood argued that, without a stay, he would be denied due process in the civil proceedings because he would be forced to assert his fifth amendment right against self-incrimination while the criminal charges were still pending. The Accurate companies moved to adopt and clarify Mahmood's motion to stay. Following the circuit court's denial of their motions, defendants filed the instant interlocutory appeal. Defendants contend that the circuit court erred in denying their motions and therefore request this court to reverse the circuit court's decision and order a stay in the instant matter until the resolution of the federal criminal case. For the following reasons, we affirm.

¶ 2                                    I. BACKGROUND

¶ 3     Universal Metro is a not-for-profit organization that, *inter alia*, administers homecare services to "ethnic seniors of India, Pakistan, Bangladesh, the Middle East, Latin America, and Europe." Universal Industries, Inc., is an Illinois corporation which holds homecare services contracts that Universal Metro fulfills. The Accurate companies are accounting corporations solely owned and controlled by Mahmood, who serves as an auditor and accountant.

¶ 4     On January 19, 2017, plaintiffs filed the instant action in state court. Relevant to this appeal is plaintiffs' second amended complaint, filed on May 7, 2019, which alleged claims of conversion

and unjust enrichment.[1] The complaint alleged that on or about June 24, 2002, plaintiffs and Accurate Consulting Enterprise Group, Ltd., entered into an agreement to provide a limited financial compliance audit for the period of July 2001 to February 2002. Mahmood was assigned to the audit. Although no further written agreements were executed between the parties, Mahmood continued to provide auditing services to Universal and became its comptroller and bookkeeper. Plaintiffs alleged that beginning in 2011, a series of checks and transfers totaling approximately $9 million were disbursed from Universal to Mahmood and the Accurate companies without authorization.

¶ 5    On March 21, 2019, Mahmood was charged by information with criminal tax evasion in federal court, in a case captioned United States v. Imran Mahmood, No. 18-CR-519 (N.D. Ill.). The charges alleged that in 2014, Mahmood willfully evaded payment of income tax in the amount of $1,215,935 on more than $3 million in income he received from "Company A."[2] The information charged that on or about October 10, 2015, Mahmood "willfully failed and caused to be filed a false personal income tax return that failed to report all income he received in [2014]."

¶ 6    On November 6, 2019, Mahmood filed a motion to stay the civil proceedings, pending disposition of the federal criminal case. Mahmood argued that the civil proceedings should be stayed because without a stay he would be "seriously and unfairly prejudice[d]" and "will be denied due process if he is forced to assert his Fifth Amendment right against self-incrimination

---

[1]The complaint alleges "[n]o wrongdoing" against Chicago Land Trust Company and states that it was "joined solely for the purposes of entering effective and complete relief." Similarly, Imran, the spouse of Mahmood, was joined to the extent that she "has or claims to have an interest in the beneficial interest in [a] Land Trust."

[2]The information defines "Company A" as a "not-for-profit company that, among other services, provided homecare services to seniors residing in Illinois."

in these civil proceedings." Further, Mahmood argued that he would be denied his right to effective assistance of counsel.

¶ 7    While defendants' motion was pending, plaintiffs propounded interrogatories, a request to produce documents, and a request to admit. On November 13, 2019, Mahmood moved to stay discovery, arguing that discovery should be stayed until there was a determination by the court on the motion to stay proceedings. On November 21, 2019, the circuit court ordered "[a]ll discovery as to Mahmood *** tolled pending ruling on [the] motion to stay" and set a briefing schedule on the motion to stay.

¶ 8    On December 9, 2019, the Accurate companies joined in Mahmood's motion to stay proceedings via a motion to adopt and clarify. In their motion to adopt and clarify, the Accurate companies argued that a "full stay of proceedings as to Mahmood and [the Accurate companies should be granted]" because they "must rely on Mahmood, their sole shareholder, director, and officer to answer discovery requests" and he "cannot do so without imperiling self-incrimination or adverse inferences." The Accurate companies contended that the "Fifth Amendment privilege" would be implicated where the information sought was testimonial, as the "review of the interrogatories and request to produce in the instant case reveals that every question or request seeks testimonial responses."

¶ 9    On March 11, 2020, a hearing was held on the motions. The court found that "[t]his case is unlike some cases where the request for a stay is made due to a parallel criminal proceeding." According to the court, the federal action was different from the instant civil proceeding because it required proving that Mahmood did not pay taxes and not that he "came into possession of *** money unlawfully or illicitly." The court further considered the five factors articulated in *Davies v. Pasamba*, 2014 IL App (1st) 133551, ¶ 52, in determining whether a stay was appropriate,

including (1) the plaintiff's interest in an expeditious resolution of the civil case and any prejudice to the plaintiff in not proceeding, (2) the interests and burdens on the defendant, including the extent to which defendant's fifth amendment rights are implicated, (3) the convenience to the court in managing its docket and efficiently using judicial resources, (4) the interests of persons who are not parties to the civil proceeding, and (5) the interests of the public in the pending civil and criminal actions.

¶ 10    The circuit court found that four of the five factors favored denial of the motion for a stay. First, the court noted that plaintiffs clearly have an interest in the expeditious resolution of the civil case because they allege being deprived of approximately $9 million. However, the second factor weighed in favor of defendants, who established "some tension between [Mahmood's fifth amendment] rights and moving forward with this case." As to the third factor, the court found that it "clearly notates against the stay in this case" because the issue could have been raised previously, given that this was a 2017 case and, "although the information was not filed until 2019 [in the criminal case], the criminal complaint has been on file since 2018." Fourth, the court noted that a stay in this case may potentially delay a consolidated case, Universal Metro Asian Services Ass'n v. Ekhomu, No. 2018-L-011704 (Cir. Ct. Cook County), where plaintiff Universal Metro filed suit against its auditor or accountant. Finally, the court noted that the fifth factor could go "either way, the public has an interest in [the] swift prosecution of criminal matters, but also in justice for individuals who claim to have been defrauded." With respect to the stay of discovery, the court found that there was no "clear-cut case and the briefs did not make out one that any specific interrogatory or document request seeks or that a response to any of them *** would be clearly testimonial in nature." Nevertheless, the court stated that, "if the [d]efendants do wish to object to

any particular interrogatory request or request for production on [Fifth] Amendment grounds, I'm not precluding them from doing so as the case moves forward."

¶ 11    After the hearing, the court entered an order denying (1) Mahmood's motion to stay proceedings, (2) Mahmood's motion to stay discovery, and (3) the Accurate companies' motion to adopt and clarify Mahmood's motion to stay. The court further ordered defendants "to answer the second amended complaint and all written discovery." On March 30, 2020, defendants filed a notice of interlocutory appeal pursuant to Illinois Supreme Court Rule 307(a)(1) (eff. Nov. 1, 2017).

¶ 12    On or about April 9, 2020, Mahmood responded to plaintiffs' first set of interrogatories, request for production of documents, and request to admit by asserting his right against self-incrimination under the fifth amendment.

¶ 13                                    II. ANALYSIS

¶ 14    On appeal, defendants argue that the circuit court erred in denying their motions to stay where the factors used to evaluate the propriety of a stay in the civil proceeding overlap with the criminal prosecution. Defendants also contend that the court erred in denying their motions to stay discovery because "virtually all of the written discovery promulgated by [plaintiffs] sought testimonial responses and information."

¶ 15                                    A. Mootness

¶ 16    Plaintiffs argue that this appeal became moot when defendants filed their responses to plaintiffs' discovery requests. Plaintiffs contend that, by submitting their answers and asserting their fifth amendment right to plaintiffs' first set of interrogatories, request for production of documents, and request to admit, defendants can no longer seek reversal of the circuit court's

denial of their motion to stay discovery and motion to adopt and clarify because there is no longer an active controversy.

¶ 17    Mootness presents a question of justiciability. *MI Management, LLC v. Proteus Holdings, LLC*, 2018 IL App (1st) 160972, ¶ 61. In order to invoke the subject-matter jurisdiction of the court, a case must present a justiciable matter. See *In re M.W.*, 232 Ill. 2d 408, 424 (2009) (subject-matter jurisdiction exists as a matter of law if the matter before the court is "justiciable"). Generally, "a 'justiciable matter' " is "a controversy appropriate for review by the court, in that it is definite and concrete, as opposed to hypothetical or moot, touching upon the legal relations of parties having adverse legal interests." *Belleville Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc.*, 199 Ill. 2d 325, 335 (2002). An appeal is moot if "the occurrence of events since filing of the appeal makes it impossible for the reviewing court to render effectual relief." *Berlin v. Sarah Bush Lincoln Health Center*, 179 Ill. 2d 1, 7 (1997). "The existence of an actual controversy is an essential requisite to appellate jurisdiction, and courts of review will generally not decide abstract, hypothetical, or moot questions." *In re Marriage of Nienhouse*, 355 Ill. App. 3d 146, 149 (2004). "Mootness, as a doctrine, stems from the concern that parties to a resolved dispute lack a sufficient personal stake in the outcome to assure that there is an adversarial relationship that sharpens the presentation of issues upon which the courts largely depend for illumination of difficult questions." *Fisch v. Loews Cineplex Theatres, Inc.*, 365 Ill. App. 3d 537, 539 (2005). An action will be dismissed as moot when a party has secured what was originally sought. *Id.* at 539-40. Claims of mootness present questions of law, which we review *de novo. In re Alfred H.H.*, 233 Ill. 2d 345, 350 (2009).

¶ 18    Here, defendants seek to have the instant civil proceedings stayed along with discovery, pending disposition of the federal criminal action. We note that an active controversy exists where

there is a question of whether a stay of proceedings should have been granted. Defendants have not secured what was originally sought, which is a stay of proceedings pending the federal action. Further, we find that defendants' response to discovery does not render their efforts to obtain a stay moot because further discovery may ensue. As defendants point out, Mahmood "most certainly will be called upon to give *** deposition in his individual capacity and as a representative of [the Accurate companies]." As such, we find that the issue before us presents an actual controversy and is, therefore, not moot.

¶ 19                                 B. Jurisdiction

¶ 20    Regardless of whether the parties raise the issue, this court has an independent duty to evaluate its own jurisdiction (*A.M. Realty Western L.L.C. v. MSMC Realty, L.L.C.*, 2016 IL App (1st) 151087, ¶ 67) and to dismiss an appeal if jurisdiction is lacking (*Department of Healthcare & Family Services v. Cortez*, 2012 IL App (2d) 120502, ¶ 7). As a general rule, an appeal may only be taken from a final order. *American Country Insurance Co. v. Chicago Carriage Cab Corp.*, 2012 IL App (1st) 110761, ¶ 21. However, Rule 307(a)(1) provides that an appeal may be taken from an interlocutory order "granting, modifying, refusing, dissolving, or refusing to dissolve or modify an injunction." Ill. S. Ct. R. 307(a)(1) (eff. Nov. 1, 2017). Defendants appeal both the circuit court's order denying a stay of the civil proceedings and the order denying a stay of discovery. It has long been established that the denial of a motion to stay a proceeding may be treated as a denial of a request for a preliminary injunction, which may form the basis for an interlocutory appeal as of right pursuant to Rule 307(a)(1). *Marzouki v. Najar-Marzouki*, 2014 IL App (1st) 132841, ¶ 8. Thus, we have jurisdiction to review the circuit court's denial of defendants' motion to stay the civil proceedings.

¶ 21 Contrarily, discovery orders that are purely ministerial or administrative and regulate only procedural details of the litigation are not injunctive in nature. *Rathje v. Horlbeck Capital Management, LLC*, 2014 IL App (2d) 140682, ¶ 26. Thus, they do not fall within the ambit of injunctive relief. *In re A Minor*, 127 Ill. 2d 247, 261-62 (1989). Our supreme court has held that, to determine what constitutes an appealable injunctive order under Rule 307(a)(1), we must look to the substance of the action and not its form. *Id.* at 260.

¶ 22 An injunction has been defined as " 'a judicial process, by which a party is required to do a particular thing, or to refrain from doing a particular thing.' " *Id.* at 261. Actions of the circuit court having the force and effect of injunction are appealable even if called something else. *Id.* at 260. Here, the circuit court's order denying defendants' motion to stay required defendants "to respond to all written discovery." The court's order served to do more than regulate the procedural details of the litigation. It required defendants to disclose substantive evidence relevant to the issues at trial and had an injunctive effect apart from the litigation. Thus, we conclude that, like the circuit court's order denying the motion to stay the civil proceedings, the court's order denying the stay of discovery is reviewable under Rule 307(a)(1).

¶ 23                                    C. Stay of Proceedings

¶ 24 Defendants argue that the circuit court abused its discretion in denying the stay of proceedings where to do so would violate their right against self-incrimination.

¶ 25 The fifth amendment provides that "[n]o person *** shall be compelled in any criminal case to be a witness against himself." U.S. Const., amend. V. "The right against self-incrimination is one of the most fundamental rights under the Constitution of the United States." *CHB Uptown Properties, LLC v. Financial Place Apartments, LLC*, 378 Ill. App. 3d 105, 108 (2007). When, as here, criminal charges are pending against a party to a civil case, courts may defer civil proceedings

in such a manner to, *inter alia*, protect a party from making admissions or furnishing other proof of a crime, protect the party from not being able to defend a civil suit regarding the same matter, protect the party from abuse of discovery in the criminal matter, and protect the party from otherwise prejudicing his criminal case. *People ex rel. Hartigan v. Kafka & Sons Building & Supply Co.*, 252 Ill. App. 3d 115, 119 (1993). However, "the fact that a party involved in a civil proceeding invokes his fifth amendment privilege against self-incrimination 'does not *** mandate a stay of [the] civil proceeding[ ] pending the outcome of similar or parallel criminal proceedings.' " *Cordeck Sales, Inc. v. Construction Systems, Inc.*, 382 Ill. App. 3d 334, 348-49 (2008) (quoting *Jacksonville Savings Bank v. Kovack*, 326 Ill. App. 3d 1131, 1135 (2002)). The party seeking the stay must justify it by clear and convincing circumstances outweighing potential harm to the party against whom the stay is operative. *Davies*, 2014 IL App (1st) 133551, ¶ 36.

¶ 26    The decision to grant such a stay is a matter within the trial court's discretion. *Jacksonville*, 326 Ill. App. 3d at 1136. Under the abuse of discretion standard, the question is not whether this court might have decided the issue differently. *In re Marriage of Samardzija*, 365 Ill. App. 3d 702, 708 (2006). We will not disturb a trial court's decision to issue or deny a stay absent an abuse of discretion. *Cholipski v. Bovis Lend Lease, Inc.*, 2014 IL App (1st) 132842, ¶ 39. A trial court abuses its discretion when its "ruling is arbitrary, fanciful, or unreasonable, or when no reasonable person would take the same view." *Bovay v. Sears, Roebuck & Co.*, 2013 IL App (1st) 120789, ¶ 26.

¶ 27    In determining the propriety of a stay, the court considers the following five factors: (1) the plaintiff's interest in an expeditious resolution of the civil case and any prejudice to the plaintiff in not proceeding, (2) the interests of and burdens on the defendant, including the extent to which defendant's fifth amendment rights are implicated, (3) the convenience to the court in managing

its docket and efficiently using judicial resources, (4) the interests of persons who are not parties to the civil proceedings, and (5) the interests of the public in the pending civil and criminal actions. *Davies*, 2014 IL App (1st) 133551, ¶ 52.

¶ 28 On appeal, defendants challenge only the circuit court's finding with respect to the second factor, *i.e.*, " 'the interests of and burdens on the defendant, including the extent to which the defendant's fifth amendment rights are implicated.' " Thus, we do not review the circuit court's disposition on the other four factors, which, as we recited earlier, the court determined weighed against granting the stay.

¶ 29 Defendants assert that the circuit court erred in its analysis of the second factor. To their point, defendants recite that portion of the circuit court's ruling in which it stated that it would look to the factors as articulated in *Davies* in rendering its decision, that *Davies* was instructive because it is a "2014 case from the 1st District which controls [and] the United States District's formulation in [*Hollinger Int'l., Inc. v. Hollinger Inc.*, 2005 U.S. Dist. LEXIS 14437] and the 4th District earlier formulation [in *Jacksonville*, 326 Ill. App. 3d at 1131] do not control." They then proceed to argue that, because the court's distinction "makes no sense, they appear to confirm a very serious error made by the court with respect to the second factor."

¶ 30 Prior to addressing the substance of defendants' argument, we would point out the following. It is fundamental in Illinois that the decisions of the appellate court are binding precedent on all circuit courts, regardless of locale. *People v. Harris*, 123 Ill. 2d 113, 128 (1988). Decisions of the appellate court in one district, though not binding on the appellate court in other districts, are binding on circuit courts throughout the state. *State Farm Fire & Casualty Co. v. Yapejian*, 152 Ill. 2d 533, 539 (1992). In the event conflicts arise amongst the districts, the circuit court is bound by the decision of the appellate court of the district in which it sits. *Aleckson v.*

*Village of Round Lake Park*, 176 Ill. 2d 82, 92 (1997). Generally, a trial court located in one appellate district will adhere to the decisional law in that district. See *Garcia v. Hynes & Howes Real Estate, Inc.*, 29 Ill. App. 3d 479, 482 (1975).

¶ 31     Here, the circuit court of Cook County, which is located in the First District, looked to the factors as articulated in *Davies*, a First District Appellate Court case. *Davies* cites *Jacksonville* and reiterates the same factors for stay. The federal case of *Hollinger*, which has no binding authority, also included similar factors. See *Illinois State Toll Highway Authority v. Amoco Oil Co.*, 336 Ill. App. 3d 300, 317 (2003) (providing that "[f]ederal cases are not binding authority in [Illinois] state courts") *Davies*, a more recently decided First District case, remains good precedent, is instructive as to the issue of whether a stay should be granted, and is controlling. Thus, there was nothing either "curious" or nonsensical about the circuit court's reliance on caselaw from its home district.

¶ 32     We return to our review of defendants' substantive claim. Defendants argue that "a very serious error [was] made by the [c]ircuit [c]ourt with respect to [the] determination of the second factor." They maintain that a party's fifth amendment rights are implicated when the issues in the criminal action overlap with those in the civil proceedings and, here, the cases overlap because "the factual issues and allegations *** share a common nucleus of operative facts." It is their contention that whether a party's fifth amendment rights are implicated is not only a significant factor but the most significant factor. The court's reliance on a "same proofs analysis" skewed its application of the test, resulting in the court giving improper weight to the four less significant factors.

¶ 33     Contrary to defendants' assertions, the circuit court ultimately found that the second factor weighed in favor of defendants because they showed "some tension between [Mahmood's fifth amendment] rights and moving forward with this case." We acknowledge that there may be some

inherent risk to defendants' rights in proceeding with the instant case. However, as the circuit court correctly concluded, although this factor may weigh in favor of the defendants with respect to Mahmood's fifth amendment rights, this was only one of the five factors in determining the propriety of a stay. Further, as the court in *Jacksonville* stated,

> " '[a] defendant has no absolute right not to be forced to choose between testifying in a civil matter and asserting his [f]ifth [a]mendment privilege. Not only is it permissible to conduct a civil proceeding at the same time as a related criminal proceeding, even if that necessitates invocation of the [f]ifth [a]mendment privilege, but it is even permissible for the trier of fact to draw adverse inferences from the invocation of the [f]ifth [a]mendment in a civil proceeding.' " *Jacksonville*, 326 Ill. App. 3d at 1135 (quoting *Keating v. Office of Thrift Supervision*, 45 F.3d 322, 326 (9th Cir. 1995)).

¶ 34    Our sister court in the Fourth District stated that whether a party's fifth amendment rights have been implicated is a "significant factor for the trial court to consider in deciding whether to stay civil proceedings." *Id.* at 1136. The court also stated, however, that it is " 'only one consideration to be weighed against others.' " *Id.* Further, the court noted that self-incrimination is more likely "[w]hen issues in a criminal matter significantly overlap with those in the civil proceedings." *Id.* at 1136-37.

¶ 35    Defendants contend that plaintiffs' second amended complaint and the criminal information allege the same facts. At first blush it may appear that the same operative facts arise as to both suits. Both the civil and federal case arise from the fact that defendants were issued checks by Company A or Universal. However, the operative facts necessary for the resolution of these two cases are quite different. For the civil action, the only relevant facts are whether the checks were unauthorized or, as the circuit court noted, whether Mahmood "came into possession

of *** money unlawfully or illicitly." But, for the federal action, what is relevant is the set of facts as to whether Mahmood received additional income for which he did not report or pay taxes. Whether Mahmood received this income without authorization is irrelevant in the federal case. The only real relation here between these two cases is a nominal one: the occurrence of alleged checks triggered the question of whether Mahmood received additional income that he did not report as income tax. Therefore, we agree with the circuit court that the causes have no bearing on each other.

¶ 36    Defendants have failed to meet their burden to show that the stay was necessary in this case. The court properly considered the relevant factors that guide a decision on a stay of proceedings. We find no abuse of discretion.

¶ 37    The Accurate companies argue that a grant of stay should extend to them because they are corporations that "must rely on Mahmood, their sole shareholder, director and officer to answer discovery requests, they face the same impediment as Mahmood."

¶ 38    We note, as do plaintiffs, that there is one critical difference between Mahmood and the Accurate companies. Defendant Mahmood is an individual. Defendants the Accurate companies are corporations, and corporations are not protected by the fifth amendment. See *In re Zisook*, 88 Ill. 2d 321, 336 (1981); see also *Braswell v. United States*, 487 U.S. 99, 102 (1988) (corporations are not protected by the fifth amendment); *cf. United States v. All Meat & Poultry Products*, No. 02 C 5145, 2003 WL 22284318, at *4 (N.D. Ill. Oct. 3, 2003) (holding that where the defendants included indicted individuals and indicted corporate entities, and "the indicted individual defendants appear to be the central figures in both the civil and criminal proceedings, courts have determined that the better course is to enter a stay as to all defendants"). The motion for a stay of proceedings was denied as to defendant Mahmood. Other than the relationship between defendant

Mahmood and the Accurate companies, defendants do not and cannot offer anything in either federal or state jurisprudence that would place the Accurate companies on equal footing with defendant Mahmood for fifth amendment purposes. The court did not abuse its discretion in denying the motion to stay the proceedings as it relates to the Accurate companies.

¶ 39                               D. Stay of Discovery

¶ 40    Defendants first argue that in finding that there was no "clearcut case" that "any specific interrogatory or document request sought testimonial information," the circuit court erred in denying their motions to stay discovery. Defendants contend that they argued in their motion that "virtually all of the written discovery promulgated by [plaintiffs] sought testimonial responses and information" and that, by attaching or incorporating the discovery requests to their motions, they effectively argued that all information sought was testimonial. Second, in reliance on *City of Chicago v. Reliable Truck Parts Co.*, 768 F. Supp. 642, 646-47 (N.D. Ill. 1991), they state, without more, that the "question as to the propriety of proceeding with discovery against a corporate defendant in the face of the exercise of the fifth amendment privilege by its corporate officers is whether the information sought is testimonial, rather than documentary and corporate in nature." The inference that we believe defendants seek to have this court draw is that the nature of the information that plaintiffs here seek is testimonial and could, therefore, potentially incriminate the representative personally. For that reason, they seemingly suggest, compliance should not be compelled.

¶ 41    Defendants can take no refuge in *Reliable*. *Reliable* does not stand for the proposition that in such instances a stay as to both the individual and corporate defendants should issue. Notably, the court in *Reliable* suggested that a stay should not be granted. Further, the court held that, should

the individual defendants decline to respond to the discovery, the City of Chicago could make full use of the negative inference of their silence at trial. *Id* at 647.

¶ 42　Further, some years earlier in *Braswell*, the petitioner argued that, because the Supreme Court had previously recognized that the act of production was potentially testimonial, such an act could not be compelled if it would tend to incriminate the representative personally. *Braswell*, 487 U.S. at 113-14. The Court recognized that its precedent showed the Court's appreciation of the testimonial nature of the act of production but nonetheless rejected the argument. *Id.* at 114-15. The Court commented that its precedent " 'apparently did not note any self-incrimination problem [with the testimonial significance of the act of production].' " *Id.* at 115.

¶ 43　We are aided in our disposition of this issue by our supreme court's reasoning in *In re Zisook*, 88 Ill. 2d at 327. In *Zisook*, attorney Zisook was subpoenaed by the Attorney Registration and Disciplinary Commission (ARDC) to produce certain documents in the possession of a professional corporation. *Id.* at 326-27. Asserting the privilege against self-incrimination, Zisook failed to comply. *Id.* at 327. The ARDC filed a report with the court, and the court issued a rule to show cause as to why Zisook should not be held in contempt. *Id.* The court, in issuing the rule noted that Zisook held the documents of the corporation in a representative, as opposed to a personal, capacity. *Id.* at 340 (citing *Bellis v. United States*, 417 U.S. 85 (1974)). The court held "employees of professional corporations do not possess the privilege against self-incrimination so far as records of the corporation are concerned." *Id.* at 337. The privilege protects an employee from disclosing his "personal" records that may incriminate him, but it does not protect him from providing corporate records in his possession that may incriminate him. *Id.* at 340. Thus, the scope of Zisook's personal privilege did not extend to the documents of the corporation. *Id.*

¶ 44    In *Reamer v. Beall*, 506 F.2d 1345 (4th Cir. 1974) (*per curiam*), *cert. denied*, 420 U.S. 955 (1975), the sole employee and stockholder of a professional corporation was found in contempt for failing to obey a jury subpoena for the production of certain corporate records. *Id.* at 1346. The court, quoting the Supreme Court's holding in *Bellis*, 417 U.S. at 100, stated " 'no privilege can be claimed by the custodian of corporate records, regardless of how small the corporation may be.' " *Reamer*, 506 F.2d at 1346.

¶ 45    We acknowledge that Mahmood's response to discovery on behalf of the Accurate companies could potentially give rise to self-incrimination concerns. Even so, that potential does not relieve him of the obligation to respond either in his individual or representative capacity. *In re Two Grand Jury Subpoenae Duces Tecum*, 769 F.2d 52, 57 (2d Cir. 1985), is consistent with our supreme court's holding in *In re Zisook* and thus, is persuasive. There, the Court of Appeals for the Second Circuit held that the fifth amendment protects a person only from incriminating himself by his own compelled testimonial communications as opposed to being incriminated by the testimonial act of a third person, such as a corporation that produces requested information. *Id.* In rare situations where a corporation's custodian of records would incriminate himself by producing the company's records, the corporation must appoint some other employee or agent to produce the documents. *Id.* Simply put, no situation could exist that would prevent a corporation from producing corporate records, as the corporation itself possesses no fifth amendment privilege.

¶ 46    We note that in this case, at the hearing on defendants' motion to stay, the circuit court suggested that the self-incrimination concerns could perhaps be addressed by appointing an agent to respond to discovery. Thus, defendants are not without some protective mechanism. As a final note, regardless of whether the court recognized defendants' attached exhibits to its motion to stay

as substantive argument, the court's denial of the motion to stay discovery was not an abuse of discretion.

¶ 47    Moreover, here, where the stay of proceedings has been denied, it would be incongruous to hold that discovery is nonetheless stayed. The purpose of discovery is to enable attorneys to better prepare and evaluate their cases. *People ex rel. Terry v. Fisher*, 12 Ill. 2d 231, 236 (1957). Discerning the truth and the ultimate disposition of the litigation is best accomplished when the parties are well educated regarding their respective claims. *Monier v. Chamberlain*, 35 Ill. 2d 351, 361 (1966). It is more than well established in Illinois that pretrial discovery is intended to enhance the truth-seeking process. *Drehle v. Fleming*, 129 Ill. App. 2d 166, 171 (1970), *aff'd*, 49 Ill. 2d 293 (1971). The practical effect of a stay of discovery here would be to stay the fair and final disposition of the civil proceedings. As we found no abuse of discretion in the court's denial of stay of the proceedings, we cannot so find in its denial of a stay of discovery.

¶ 48                                        III. CONCLUSION

¶ 49    For the reasons stated, we affirm the judgment of the circuit court.

¶ 50    Affirmed.

No. 1-20-0584

| | |
|---|---|
| **Cite as:** | *Universal Metro Asian Services Ass'n v. Mahmood*, 2021 IL App (1st) 200584 |
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 2017-L-000662; the Hon. Michael F. Otto, Judge, presiding. |
| **Attorneys for Appellant:** | Michael Lee Tinaglia, of Law Offices of Michael Lee Tinaglia, Ltd., of Park Ridge, for appellants. |
| **Attorneys for Appellee:** | Jeffrey Schulman and Katelyn Hodgman, of Wolin & Rosen, Ltd., of Chicago, for appellees. |